UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ANGELA J. SMITH, Personal
Representative of the Estate of GILBERT
SAMPSON SMITH, JR., and as
Grandmother and Next Friend of Kianna
Smith, Minor Daughter of GILBERT
SAMPSON SMITH, JR.,

    Plaintiff,

    v.

CORRECTIONS CORPORATION OF
AMERICA, INC.,

    Defendant.

Civil Action No. 09-0594 (JDB)

## MEMORANDUM OPINION

This case arises from the death of Gilbert Smith, Jr., an inmate who was incarcerated at the Correctional Treatment Facility located in the District of Columbia. The Correctional Treatment Facility is a private prison owned and operated by the Corrections Corporation of America ("CCA") that houses inmates in custody of the District's Department of Corrections. Angela Smith, personal representative of Mr. Smith's estate, brings this action against the Corrections Corporation of America.[1] She contends that CCA provided negligent medical care to Gilbert Smith while he was incarcerated, and offers that the injuries and damages he suffered as a result of CCA's negligence contributed to his death following his release from custody. Compl. ¶

---

[1] Unity Healthcare, Inc. was originally named as an additional defendant in this action. The Court substituted the United States as a defendant for Unity because "Unity has been deemed to be an employee of the United States of America for purposes of liability under the Federal Tort Claims Act." November 18, 2009 Order [Docket Entry 26], at 1-2 (quotation omitted). The Court then dismissed the United States because Ms. Smith failed to exhaust her administrative remedies for her claims against the United States. See id. at 2-3.

31. She asserts claims for the following: (1) negligent provision of medical care; (2) violation of the Eighth Amendment pursuant to 42 U.S.C. § 1983; (3) survival on behalf of both herself and Gilbert Smith's daughter; and (4) wrongful death.

Before the Court is [7] defendant CCA's motion to dismiss claims (1), (2), and (4), and [8] Ms. Smith's motion for leave to amend the complaint. Upon careful consideration of the parties' memoranda and the entire record herein, and for the reasons set forth below, the Court will grant in part and deny in part CCA's motion to dismiss. The Court will deny Ms. Smith's motion to amend the complaint.

## BACKGROUND

Gilbert Smith, Jr. was incarcerated at the Correctional Treatment Facility in the District of Columbia for seven months. Compl. ¶ 12. CCA operates the Correctional Treatment Facility pursuant to a contract with the District of Columbia and, Ms. Smith alleges, provides medical care and treatment there along with dismissed defendant Unity Healthcare, Inc.. Compl. ¶¶ 1, 8; see also November 18, 2009 Order at 1.

Before being incarcerated, Gilbert Smith "was partially paralyzed and confined to a wheelchair as a result of gunshot wounds." Compl. ¶ 12. While in prison, these injuries, Angela Smith contends, prompted Gilbert Smith to make repeated "requests for medical care, treatment, and attention including, but not limited to, providing medication when ordered by his physicians, providing prompt and adequate dressing changes to prevent the formation and growth of decubitus sores, [and] providing sanitary cell conditions." Compl. ¶ 13; see also Compl. ¶¶ 19-21, 25-26. She alleges, however, that CCA failed to "provide a healthcare system that included prompt, proper, adequate, and reasonable medical care and treatment to all persons incarcerated

under their care, custody, and supervision." Compl. ¶ 14.  In so doing, Ms. Smith asserts that CCA "failed to comply with established standards of care."  Compl. ¶ 14.

Gilbert Smith was released from custody at the Correctional Treatment Facility in May 2007.  Compl. ¶ 12.  He died on January 19, 2008, allegedly as a result of injuries suffered while incarcerated.  Compl. ¶ 31.  Plaintiff Angela Smith brought this action as personal representative of Mr. Smith's estate, and next friend of Mr. Smith's daughter.  Compl. ¶¶ 1, 7.

## STANDARD OF REVIEW

All that the Federal Rules of Civil Procedure require of a complaint is that it contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)); accord Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam).  Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  Twombly, 550 U.S. at 555-56; see also Papasan v. Allain, 478 U.S. 265, 286 (1986).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570); accord Atherton v. Dist. of Columbia Office of the Mayor, 567 F.3d 672, 681 (D.C. Cir. 2009).  A complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 129 S. Ct. at 1949.  This amounts to a "two-pronged approach"

under which a court first identifies the factual allegations entitled to an assumption of truth and then determines "whether they plausibly give rise to an entitlement to relief." Id. at 1950-51.

The notice pleading rules are not meant to impose a great burden on a plaintiff. Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 347 (2005); see also Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512-13 (2002).  When the sufficiency of a complaint is challenged by a motion to dismiss under Rule 12(b)(6), the plaintiff's factual allegations must be presumed true and should be liberally construed in his or her favor.  Leatherman v. Tarrant County Narcotics & Coordination Unit, 507 U.S. 163, 164 (1993); Phillips v. Bur. of Prisons, 591 F.2d 966, 968 (D.C. Cir. 1979); see also Erickson, 551 U.S. at 94 (citing Twombly, 550 U.S. at 555-56).  The plaintiff must be given every favorable inference that may be drawn from the allegations of fact. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000).  However, "the court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint."  Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994).  Nor does the court accept "a legal conclusion couched as a factual allegation," or "naked assertions [of unlawful misconduct] devoid of further factual enhancement."  Iqbal, 129 S. Ct. at 1949-50 (internal quotation marks omitted); see also Aktieselskabet AF 21. November 21 v. Fame Jeans Inc., 525 F.3d 8, 17 n.4 (D.C. Cir. 2008) (the court has "never accepted legal conclusions cast in the form of factual allegations").

## ANALYSIS

**I.      Negligent Provision of Medical Care**

CCA seeks to dismiss of Ms. Smith's claim for negligent medical care because it "does not have . . . any authority or obligation to provide medical care to inmates." Def.'s Mot. to

Dismiss ("Def.'s Mot.") [Docket Entry 7], at 4.  Instead, according to CCA, "all medical care was provided by third-party vendors at all relevant times, pursuant to a contract with the District of Columbia." Id.  It therefore contends that Ms. Smith cannot assert "an actionable medical negligence claim against CCA." Id. at 5.

      The Court agrees.  "CCA is a private prison operator which, pursuant to a contract with the District of Columbia, is charged with housing inmates at [the Correctional Treatment Facility]." Def.'s Mot. at 4.  According to the operating agreement between the District and CCA, "[t]he District shall assume all liability for the provision of all medical services for inmates housed at the Facility and shall render such services in accordance with the Operating Standards . . . ." Id., Exhibit 3 (Modification #4 of the Operations and Management Agreement by and between the District of Columbia and CCA).[2]  The operating agreement, then, conclusively demonstrates that CCA owed no duty as a matter of law to provide medical care to Gilbert Smith.  Therefore, Ms. Smith cannot state a claim for negligent provision of medical care against CCA.  See Hinton, 624 F. Supp. 2d at 47.  Moreover, amending the complaint cannot remedy this defect.

---

     [2] Although the Court generally is precluded from considering matters outside the pleadings on a motion to dismiss, Fed. R. Civ. P. 12(d), it may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, or documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss." Hinton v. Corrections Corp. of Am., 624 F. Supp. 2d 45, 46 (D.D.C. 2009) (citations and quotations omitted).  Here, "[t]he plaintiff's entire case rests in the first instance on whether the defendant had a duty to provide health care to the plaintiff." Id. at 47.  "By pleading that the defendant had a duty to provide [Gilbert Smith] with [medical care], the plaintiff's complaint necessarily rests on the contract, although it did not incorporate the contract." Id.  Therefore, the Court may consider the contract between the District and CCA in resolving CCA's motion to dismiss.

## II.     Section 1983 Claim for Violation of the Eighth Amendment

Claims against private actors may proceed under section 1983 if (1) the plaintiff was deprived of a federal right by (2) an individual acting under color of state law. See Gomez v. Toledo, 446 U.S. 635, 640 (1980); see also Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 937-38 (1982). Where a plaintiff seeks to hold a private corporation responsible for the actions of its employees -- as is the case here -- the plaintiff must also demonstrate that the employee acted pursuant to a custom or policy of the corporation. See Monell v. Dep't of Soc. Servs. of New York, 436 U.S. 658, 694 (1978); Sanders v. Sears, Roebuck & Co., 984 F.2d 972, 975-76 (8th Cir. 1993); Iskander v. Forest Park, 690 F.2d 126, 128 (7th Cir. 1982); Powell v. Shopco Laurel Co., 678 F.2d 504, 505-06 (4th Cir. 1982). This is so because "[s]ection 1983 will not support a claim based on a respondeat superior theory of liability." Polk Co. v. Dodson, 454 U.S. 312, 325 (1981); accord Monell, 436 U.S. at 694; Powell, 678 F.2d at 506 ("[n]o element of the Court's ratio decidendi [in Monell] lends support for distinguishing the case of a private corporation" from that of a municipal corporation).[3] "[W]hether there is a direct causal link

---

[3] Several judges of this Court have concluded that for a private corporation to be held liable for the actions of its employees, a plaintiff must prove the employees acted pursuant to a corporate policy or custom. See, e.g., Jackson v. Correctional Corp. of Am., 564 F. Supp. 2d 22, 27-28 (D.D.C. 2008); Gabriel v. Corrections Corp. of Am., 211 F. Supp. 2d 132, 137-38 (D.D.C. 2002). These cases based their holdings in part on the reasoning that where a private corporation provides a service ordinarily provided by a municipality, the corporation "stands in the shoes of the municipality and is subject to the same liability." Jackson, 564 F. Supp. 2d at 27. Although these cases reach the correct result, the Court will not adopt their reasoning -- the Supreme Court has never suggested that where a private actor under contract with the state exercises power traditionally reserved to a state, that private actor is clothed with the liabilities and immunities of the state. Were the reasoning of these cases correct, a plaintiff who wanted to bring a section 1983 claim against a private actor exercising a traditional state prerogative would be barred from doing so because a state is not a "person" within the meaning of section 1983. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989). No decision of the Supreme Court has adopted such a limited reading of section 1983. Cf. Correctional Servs. Corp. v. Malesko, 534 U.S. 61,

between a municipal policy and the alleged constitutional deprivation" is the "first inquiry" in a section 1983 claim against a private corporation. City of Canton, Ohio v. Harris, 489 U.S. 378, 385 (1989).[4]

    A.    CCA's Custom or Policy

A municipality's custom or policy may "cause" a constitutional violation under several different circumstances. "[F]or instance, the [corporation] or one of its policymakers [could have] explicitly adopted the policy that was 'the moving force of the constitutional violation.'" Warren, 353 F.3d at 39 (quoting Monell, 436 U.S. at 694). "Or a policymaker could knowingly ignore a practice that was consistent enough to constitute custom," thereby leading to a violation. Id. Or the "[corporation's] conduct may evidence a 'deliberate indifference' to the rights of its inhabitants." Harris, 489 U.S. at 388; accord Baker v. Dist. of Columbia, 326 F.3d 1302, 1306 (D.C. Cir. 2003). Here, Ms. Smith adopts the "deliberate indifference" theory of corporate liability -- where "'the [corporation] knew or should have known of the risk of constitutional violations,' but did not act." Warren, 353 F.3d at 39 (quoting Baker, 326 F.3d at 1306).

Ms. Smith offers two allegations to support her claim that CCA was deliberately indifferent. First, she contends that

> there were systemic problems associated with referrals for off-site medical

---

82 (2001) (Stevens, J., dissenting) (Supreme Court jurisprudence recognizes general rule that "state prisoner may sue a private prison for deprivation of constitutional rights")

[4] This Court previously suggested in Moonblatt v. District of Columbia, 572 F. Supp. 2d 15 (D.D.C. 2008), that for a plaintiff to prevail on a section 1983 claim against a private corporation, the plaintiff need only prove a violation of a federal right occurring under color of state law. 572 F. Supp. 2d at 22. Moonblatt, however, did not address the custom or policy issue, and hence in that sense incompletely delineated the requirements for stating a section 1983 claim against a private corporation.

> treatment of inmates and specialists care that were known to defendant CCA and Unity. These defendants failed to take reasonable actions to ensure that systemic problems were addressed.

Compl. ¶ 15. Second, she asserts that

> defendants knew or should have known that there were unreasonable delays associated with the deceased's treatment and failed to take the steps necessary to correct systemic problems associated with such delays.

Compl. ¶ 21. In short, Ms. Smith alleges that CCA knew or should have known about supposedly ongoing Eighth Amendment violations regarding Gilbert Smith's medical care.

These allegations, coupled with Ms. Smith's specific factual allegations, are sufficient to survive CCA's motion to dismiss. To be sure, the allegations in paragraphs fifteen and twenty-one of the complaint do not, by themselves, state a section 1983 claim based on deliberate indifference. Indeed, they do nothing more than recite the requisite causal elements of custom or policy liability based on deliberate indifference -- that is, that the District "knew or should have known" about possible constitutional violations but failed to act. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 555). The allegations in paragraphs fifteen and twenty-one, standing alone, "are conclusory and not entitled to be assumed true." Id.

But Ms. Smith bolsters these allegations with factual allegations that plausibly suggest she is entitled to relief. Ms. Smith alleges that "[o]n almost a daily basis, the deceased made requests for medical care, treatment, and attention including, but not limited to, providing medication . . . , providing prompt and adequate dressing changes . . . , providing of sanitary cell conditions . . . , [and] providing of prompt transfers to medical facilities." Compl. ¶ 13. Because CCA operated the Correctional Treatment Facility, the Court can reasonably infer that these

complaints and grievances were made to CCA. Accordingly, Ms. Smith has properly pleaded that CCA knew of the supposed unconstitutional medical care and treatment Gilbert Smith received. And Ms. Smith's allegation that CCA "failed to take reasonable actions to ensure that systemic problems were addressed," Compl. ¶ 15, coupled with the absence of any indication that Gilbert Smith's medical care and treatment improved during his incarceration, plausibly suggests that CCA failed to act in the face of its employees' allegedly unconstitutional behavior. Hence, Ms. Smith has sufficiently alleged that Gilbert Smith's supposed unconstitutional medical treatment resulted from CCA's deliberate indifference.

      B.      Deprivation of Gilbert Smith's Rights Under Color of State Law

The Court previously has concluded that CCA's operation of the Correctional Treatment Facility occurs under color of state law. See Moonblatt, 572 F. Supp. 2d at 24.[5] Accordingly, the sole remaining inquiry is whether Ms. Smith has adequately alleged that CCA violated Gilbert's Smith's federal rights. Ms. Smith contends that CCA violated the Eighth Amendment because it was "deliberately indifferent to deceased['s] injuries, serious medical conditions, the deterioration of his overall health and well being, and recovery." Compl. ¶ 18. To show deliberate indifference, and therefore allege a violation of the Eighth Amendment, Ms. Smith must "allege that officials had subjective knowledge of the serious medical need and recklessly disregarded the excessive risk to inmate health or safety from that risk." Baker, 326 F.3d at 1306; accord Farmer v. Brennan, 511 U.S. 825, 837 (1994) (prison official must "know[ ] of and disregard[ ]

---

[5] CCA does not dispute this conclusion, which accords with the Supreme Court's recognition that a private actor generally operates under color of state law where it exercises powers that are "traditionally the exclusive prerogative of the State." Jackson v. Metro. Edison Co., 419 U.S. 345, 353 (1974); see also Blum v. Yaretsky, 457 U.S. 991, 1005 (1982); Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 157-61 (1978).

an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference"); <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976) (plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs").

      Here, Ms. Smith has done so.  She alleges that while Gilbert Smith was incarcerated at the Correctional Treatment Facility, CCA was "fully aware that the deceased was partially paralyzed and confined to a wheelchair as a result of gunshot wounds suffered before being incarcerated."  Compl. ¶ 12.  Because of this medical history, Ms. Smith alleges Gilbert Smith made "daily . . . requests for medical care, treatment, and attention, including, but not limited to, providing medication when ordered by his physicians, providing prompt and adequate dressing changes to prevent the formation and growth of decubitus sores, providing sanitary cell conditions, [and] providing of prompt transfers to medical facilities equipped and willing to provide medical treatment when the defendants were unable or unwilling to provide medical care and treatment."  Compl. ¶ 13; <u>see also</u> Compl. ¶ 19 (CCA was "deliberately indifferent by failing to provide the deceased with timely medical care and treatment, proper medical care and treatment, [and] a sanitary living area"); Compl. ¶ 20 (CCA was "deliberately indifferent in delaying the deceased's access to medical personnel and failing to carry out medical orders").

      Taking these allegations as true and drawing all reasonable inferences in Ms. Smith's favor, she has stated a claim for violation of the Eighth Amendment.  She alleges that Gilbert Smith suffered from serious medical conditions -- a prior gunshot wound and partial paralysis. "Although the task of discerning what constitutes a 'serious medical need' under <u>Estelle</u> may prove vexing at the margins," <u>Brown v. Dist. of Columbia</u>, 514 F.3d 1279, 1284 (D.C. Cir.

2008), Gilbert Smith's injuries do not give the Court pause. See Simmons v. Cook, 154 F.3d 805, 808 (8th Cir. 1998) (paralysis a serious medical need); Cooper v. Dyke, 814 F.2d 941, 945 (4th Cir. 1987) (gunshot wound a serious medical need). And CCA knew of Gilbert Smith's serious medical needs in part because those conditions existed before his incarceration. Compl. ¶ 12. Further, Ms. Smith alleges that CCA recklessly disregarded excessive risks to his health by failing to monitor these injuries, interfering with his medical care, and failing to provide sanitary cell conditions in light of his injuries. Ms. Smith also asserts that CCA officials interfered with, and failed to monitor, Gilbert Smith's medical care. These allegations, collectively, are sufficient to state a claim that CCA "officials had subjective knowledge of the serious medical need and recklessly disregarded the excessive risk to inmate health or safety from that risk." Baker, 326 F.3d at 1306.

### III.   Wrongful Death

Under District of Columbia law, the statute of limitations applicable to a wrongful death claim is one year.[6] See D.C. Code § 16-2703 (wrongful death action "shall be brought by and in the name of the personal representative of the deceased person, and within one year after the death of the person injured"). CCA observes that although Gilbert Smith died on January 19, 2008, Angela Smith did not bring her wrongful death claim until March 30, 2009 -- more than a year after Gilbert Smith's death. See Def.'s Mot. at 8. Accordingly, CCA states, "Plaintiff's wrongful death claim is prohibited by the statute of limitations and must be dismissed." Id.

---

[6] The Court applies the statute of limitations the forum state would apply for state law claims. See A.I. Trade Fin., Inc. v. Petra Int'l Banking Corp., 62 F.3d 1454, 1458 (D.C. Cir. 1995). Because Ms. Smith's wrongful death claim accrued in the District of Columbia, the Court will apply District of Columbia law.

Ms. Smith concedes that her wrongful death claim is untimely under section 16-2702, but argues that the claim must be viewed "in light of the newly enacted" D.C. Code § 16-2801 et. seq. Pl.'s Opp'n at 6. That statute, according to Ms. Smith, "mandates that the person intending to file an action alleging medical malpractice shall notify the defendant not less than ninety (90) days prior to filing the action." Id. (citing D.C. Code. § 16-2802). If notice "is served within ninety (90) days of the expiration of the applicable statute of limitations, the time for commencement of the action shall be extended ninety (90) days from the date of service of the notice." Id. at 7 (citing D.C. Code § 16-2803).

But section 16-2801 et seq. applies only to medical malpractice claims. See D.C. Code. § 16-2802(a) (statute applies only where an individual "file[s] an action in the court alleging medical malpractice against a healthcare provider"). Ms. Smith, however, brings a wrongful death claim against CCA, not a medical malpractice claim. Compl. ¶¶ 30-32. Accordingly, the only relevant statute of limitations is the one provided by D.C. Code § 16-2702, which requires wrongful death actions to be filed "within one year after the death of the person injured." Ms. Smith did not comply with that requirement and therefore her wrongful death claim fails as a matter of law.[7] Once again, granting her leave to amend the complaint would not cure this pleading deficiency.

---

[7] Even if section 16-2801 et seq. applied to wrongful death claims based on allegations of negligent medical care, Ms. Smith could not take advantage of its provisions here. The statute applies only to actions "alleging medical malpractice against a healthcare provider." D.C. Code. § 16-2802(a). CCA is not a healthcare provider within the meaning of the statute. See id. § 16-2801.

**CONCLUSION**

For the foregoing reasons, the Court will grant in part the District of Columbia's motion to dismiss and deny Ms. Smith's motion for leave to amend. What remains in this case, then, is plaintiff's claim under 42 U.S.C. § 1983 for violation of the Eighth Amendment and plaintiff's claim for survival. A separate Order accompanies this Memorandum Opinion.

/s/
JOHN D. BATES
United States District Judge

Dated: December 16, 2009